UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEEQA ADAN, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>ANTONY J. BLINKEN, Secretary of State,<br><br>　　　Defendant. | Civil Action No. 24-591 (JDB) |

## MEMORANDUM OPINION

Deeqa Adan and her minor son, A.A.A., bring this action against U.S. Secretary of State Antony J. Blinken in his official capacity under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., to compel certain government officials to schedule an interview for and adjudicate A.A.A.'s visa application.[1]  The plaintiffs also urge this Court to set aside certain State Department visa-related policies, practices, and procedures as arbitrary and capricious, an abuse of discretion, and/or ultra vires under the APA.  The defendant ("the government") moved to dismiss the complaint in its entirety.  Because the government's delay in scheduling a consular interview for and adjudicating the visa application of A.A.A. is not unreasonable as a matter of law, the Court will grant the motion and dismiss the complaint.

### Background

Deeqa Adan is a U.S. citizen, and her son, A.A.A., is a Somali national.  Pet. Writ Mandamus & Compl. Decl. Relief [ECF No. 1] ("Compl.") ¶¶ 46–47.  Adan's husband resides in the United States, but Adan has spent the last approximately 10 years living in Somalia caring for A.A.A.  Id. ¶ 46.  Seeking to reunite with her husband in the United States, Adan began the process

---

[1] The parties dispute whether A.A.A. has a "visa application" at this time because he has not yet appeared for an interview in front of a consular officer.  Compare Mot. Dismiss & Mem. Supp. Thereof [ECF No. 6] ("Mot.") at 1 n.1, 13 (no application), with Pls.' Opp'n to Mot. [ECF No. 8] ("Opp'n") at 6 (application).  Because the distinction is immaterial in this case, the Court takes no position but uses "visa application" for ease.

1

of securing a family-based immigration visa for A.A.A. in accordance with the procedures outlined in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

Adan filed a Form I-130 Petition for Alien Relative with the U.S. Customs and Immigration Services ("USCIS") in April 2021. Id. ¶ 48. USCIS approved the petition and forwarded it to the Department of State's National Visa Center ("NVC") for pre-processing. Id. The NVC assigned the application a consular case number, and in July 2022, Adan submitted the required Form DS-260 Immigrant Visa and Alien Registration Application. Id. ¶¶ 49–50. In August 2023, the NVC sent the plaintiffs an electronic message stating that A.A.A.'s application was "documentarily qualified," id. ¶¶ 50–51, which means that the NVC would then schedule A.A.A. for an interview with a consular officer based on the date that A.A.A. was deemed "documentarily qualified" and subject to the availability of the relevant embassy or consulate, 9 FAM § 504.1-2(b); id. § 504.4-6(a).

Having received neither an interview date nor further communication from the NVC for approximately seven months, the plaintiffs filed the present complaint in March 2024. The plaintiffs generally contend that the State Department's delay in scheduling A.A.A.'s interview is unreasonable, and they assert claims under the Mandamus Act and the APA. See Compl. ¶¶ 75–99.[2] The government moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Def.'s Mot. Dismiss & Mem. Supp. Thereof [ECF No. 6] ("Mot.") at 1. The plaintiffs filed a memorandum in opposition. See Pls.' Opp'n to Mot. [ECF No. 8] ("Opp'n"). The government filed a reply. See Reply Supp. Mot. [ECF No. 10] ("Reply"). The motion is now ripe for decision.

---

[2] In their prayer for relief, the plaintiffs seek declarations that certain unspecified State Department policies, practices, and procedures are "void and without legal force or effect" and violate the APA. See Compl. at 23. Because the plaintiffs do not plead any claims that would entitle them to such relief—indeed, they do not even identify the purportedly unlawful policies, practices, and procedures—the Court does not address this issue further.

**Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, courts must "accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor," Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but the Court need not credit "legal conclusions couched as factual allegations," Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam). In ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, its exhibits, and matters of which the court may take judicial notice. See Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 42 (D.D.C. 2022).

**Analysis**

The government moves to dismiss the complaint for two reasons: as to both claims,[3] (1) neither the State Department nor the embassy has a non-discretionary duty to schedule an interview for a particular noncitizen, and even if they did, (2) the plaintiffs failed to plead a plausible claim of unreasonable delay under this Circuit's test in Telecommunications Research and Action Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). See Mot. at 5–25.

Under the APA, an administrative agency must "pass upon a matter presented to it within a reasonable time." Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (cleaned up) (quoting Mashpee Wampanoag Tribal Council, Inc. v.

---

[3] Because the "standard for undue delay under the Mandamus Act . . . is identical to the APA standard," the claims are functionally identical and the Court analyzes them together. Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (quoting Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020)).

Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003)). To state a claim of unreasonable delay, the plaintiffs must demonstrate both that an agency "failed to take a discrete agency action that it is required to take and that the delay was unreasonable." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (cleaned up). If the agency action is "unreasonably delayed," the APA authorizes the reviewing court to compel the delayed action. See id. at 338 (citing 5 U.S.C. § 706(1)).

The government first argues that State Department officials did not fail to take a required discrete agency action, because "[t]he law provides no clear duty to schedule a visa interview for any particular noncitizen." Mot. at 7. Since the Court ultimately holds that the plaintiffs have failed to allege an unreasonable delay as a matter of law, the Court will assume without deciding that State Department officials have a non-discretionary, discrete duty to schedule visa interviews for documentarily qualified applicants. See, e.g., Baygan v. Blinken, Civ. A. No. 23-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (taking similar approach); Cheng v. Blinken, Civ. A. No. 23-2602 (JDB), 2024 WL 4345831, at *6 (D.D.C. Sept. 30, 2024) (same).[4]

To evaluate the reasonableness of a delay, courts in this Circuit apply the six non-exclusive factors articulated in TRAC:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

---

[4] The government argues that under the Mandamus Act, the requirement that the plaintiffs identify a non-discretionary duty is jurisdictional. See Mot. at 5–6. To the extent the issue is jurisdictional it is statutory in nature, not constitutional. Rostamnia v. Blinken, Civ. A. No. 23-1638 (RDM), 2024 WL 1328462, at *5 n.6 (D.D.C. Mar. 28, 2024). And courts may address the merits of a case when that course of action "avoid[s] a doubtful issue of statutory jurisdiction." Id. (quoting Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008)); Asim v. Blinken, Civ. A. No. 24-638 (JEB), 2024 WL 3338778, at *2–3 (D.D.C. July 8, 2024) (taking same approach).

4

TRAC, 750 F.2d at 80 (cleaned up).

As an antecedent matter, the plaintiffs argue that the TRAC analysis is a fact-based inquiry that is not suitable for resolution at the motion to dismiss stage. Opp'n at 13. But as judges in this District have often recognized, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). Instead, if the record contains enough facts to evaluate the TRAC factors on a motion to dismiss, "then a Court may . . . do just that." Id. The Court concludes that the complaint and materials properly considered here contain sufficient facts to proceed with the TRAC analysis. See, e.g., Baygan, 2024 WL 3723714, at *6.

Factors One and Two: The first two factors strongly favor dismissal. "Factors one and two are related, and courts often consider them together." Meyou, 2022 WL 1556344, at *3 (collecting cases). This combined analysis asks "whether a rule of reason governs the agency response time and whether Congress, by statute, indicated an expected timetable for the response time." Baygan, 2024 WL 3723714, at *6.

The government contends that it uses a rule of reason by applying a first-in, first-out methodology to scheduling interviews and that there is no congressional timetable for consular officials to schedule visa interviews. See Mot. at 18–21. The plaintiffs counter that it is "the sense of Congress that the processing of [a visa] application should be completed not later than 180 days after the initial filing of the application," Compl. ¶ 73 (emphasis omitted) (citing 8 U.S.C. § 1571(b)). The plaintiffs also highlight that the Foreign Affairs Manual provides that the Department must "establish a policy under which immediate relative . . . visas be processed within 30 days of receipt of the necessary information," and the Department "expects all [immigration visa] units to strive to meet" that deadline. 9 FAM 504.7-2(b).

5

The Court agrees with the government. There is no statutory deadline for the State Department to schedule A.A.A.'s interview or adjudicate his visa application. "Congress did not provide a statutory deadline to complete processing or adjudication of visa applications"; instead, it has "given the agencies wide discretion in the area of immigration processing." Meyou, 2022 WL 1556344, at *3 (internal quotation marks omitted). As the D.C. Circuit has said, lawmakers' sentiment that agencies complete visa adjudications in 180 days is an "aspirational statement" that "does not fundamentally alter the calculus that visa application processing takes time." Baygan, 2024 WL 3723714, at *7 (citing Da Costa, 80 F.4th at 340–44). The Foreign Affairs Manual policy does not help the plaintiffs, either. To start, "a policy is just that—it is not a rule or command." Janay v. Blinken, Civ. A. No. 23-3737 (RDM), 2024 WL 3432379, at *12 (D.D.C. July 16, 2024). Second, "the policy merely requires that the Department 'process' the applications within 30 days"—not that it schedule an interview or finally adjudicate an application within that time. Id. And the Department has certainly partially processed A.A.A.'s application by reviewing the plaintiffs' DS-260 and other supporting documentation and determining and communicating that A.A.A. is "documentarily complete." See id. at *1, 12.

Where, as here, "there is no statutory or regulatory framework within which the Department of State must adjudicate I-130 applications, the Court turns to case law as its guide" to analyze the length of delay. Janay, 2024 WL 3432379, at *12; see, e.g., Milligan v. Pompeo, 502 F. Supp. 3d 302, 318 (D.D.C. 2020). Courts evaluate the length of the delay in light of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Da Costa, 80 F.4th at 340 (quoting Mashpee, 336 F.3d at 1102). Although there is no bright-line rule, "district courts have generally found that immigration delays in excess of five, six, or seven years are unreasonable, while those between three to five years are often not unreasonable." Baygan, 2024 WL 3723714, at *6 (cleaned up).

6

Courts measure the length of the delay "from the last Government action to the issuance of the opinion." Meyou, 2022 WL 1556344, at *3 (cleaned up) (quoting Mahmood v. U.S. Dep't Homeland Sec., Civ. A. No. 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)). The last government action occurred on August 4, 2023, when "the NVC confirmed . . . that Plaintiff A.A.A.'s case was documentarily qualified." Compl. ¶ 51. The present delay is thus approximately 16 months—much shorter than the delays that courts routinely find reasonable. See, e.g., Meyou, 2022 WL 1556344, at *3–4 (concluding 29-month delay in I-130 case was not unreasonable and citing cases holding the same for 25- to 40-month delays); Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases concluding that two- to three-year delays were not unreasonable). Even if this Court assessed the delay from the commencement of the visa process—the filing of the Form I-130 in April 2021—that less-than-four-year delay would still fall "within the range of wait times that courts have concluded constitute a reasonable delay." See, e.g., Baygan, 2024 WL 3723714, at *6.

The plaintiffs do not provide any cases to support the claim that a 16-month delay is unreasonable. Instead, they argue that the government's cases are inapposite because they involve a different visa category, or because they consider the impact of the COVID-19 pandemic, or because the delays at issue occurred after the applicants' consular interviews. See Opp'n at 14–16. Those arguments are not persuasive. The Court readily finds multiple cases in which courts have concluded that two- to three-year delays in family-based visa cases were not unreasonable, including cases that did not invoke the effects of the pandemic. See, e.g., Meyou, 2022 WL 1556344, at *4 (collecting cases); Tekle, 2022 WL 1288437, at *3–5. And the plaintiffs' final argument ignores the fact that "the totality of the visa-application timeline in [previous] cases would obviously be longer when accounting for the time it takes to schedule the interview." Asim v. Blinken, Civ. A. No. 24-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024). In other

7

words, the plaintiffs here would have to allege an <u>even longer</u> pre-interview delay to match the <u>total</u> length of the visa-application timelines that courts have found are reasonable in post-interview delay cases. See id. (noting that cases in which courts determined delays of less than five years were reasonable counted only "the period of time between an interview and a rendered decision").

Factors one and two therefore strongly favor dismissal.

<u>Factor four:</u> The Court turns next to the fourth TRAC factor, which also heavily favors dismissal. This factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." Da Costa, 80 F.4th at 343 (quoting TRAC, 750 F.2d at 80). The plaintiffs argue that the expedition of A.A.A.'s application would not adversely affect agency activities for three reasons. First, "for all we know, Plaintiffs here are in front of the queue." Opp'n at 12, 16. Second, because A.A.A. seeks an immigrant relative visa, he is already in "the priority" visa class. Id. at 17. And third, because a 2021 State Department cable encouraged consular officials to "prioritize cases raised by the Visa Office (e.g., cases related to litigation)," A.A.A. is again already a priority for the embassy. Id. The government disagrees, emphasizing that "[t]he NVC schedules appointments in the chronological order of the documentarily complete applications, which is predicated on when the noncitizen submits the DS-260 and required supporting documents and pays the necessary fees." Reply at 10 (citing 9 FAM 504.4-6a). A court order to prioritize A.A.A.'s application would thus push him ahead of other applicants. Mot. at 22.

The Court agrees with the government. Courts in this Circuit routinely conclude that a judicial order to put one party "at the head of the queue simply moves all others back one space and produces no net gain." Da Costa, 80 F.4th at 343 (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)). It instead creates "line-jumping and . . . delays . . . of the applications

8

that were skipped." Meyou, 2022 WL 1556344, at *4 (collecting cases).  The plaintiffs argue that the government has not demonstrated a queue at the relevant embassy, but that is not fatal.  Indeed, courts take the position that "[i]n the absence of plausible allegations that [an agency] is not applying its rule of reason, moving Plaintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the [agency's] backlog."  Da Costa, 80 F.4th at 343.  Where, as here, the plaintiffs do not plausibly allege that the government has abandoned its first in, first out methodology, courts "routinely hold that this factor conclusively favors defendants." Eljalabi v. Blinken, Civ. A. No. 21-1730 (RC), 2022 WL 2752613, at *7 (D.D.C. July 14, 2022) (internal quotation marks omitted); see Janay, 2024 WL 3432379, at *13 (concluding plaintiffs' argument that no queue exists "is unsupported by any factual allegations in the complaint and is unpersuasive").

Similarly, although the Department may issue internal guidance to prioritize certain categories of visa applications, there is presumably also a queue among the prioritized applications. After all, "[a]gency officials not working on" one applicant's "matters presumably have not just been twiddl[ing] their thumbs."  In re Barr Lab'ys, 930 F.2d at 75.  Furthermore, even if the plaintiffs are first in line, "interview scheduling fundamentally involves resource allocation at an embassy, so [their] request will necessarily entail a judicial reordering of agency priorities." Asim, 2024 WL 3338778, at *4 (cleaned up); see Janay, 2024 WL 3432379, at *13.

For all these reasons, the fourth factor strongly favors dismissal.

Factors three and five: The third and fifth TRAC factors weigh in the plaintiffs' favor. Here courts evaluate the individualized harm that the agency's delay has caused the plaintiff.  See, e.g., Baygan, 2024 WL 3723714, at *8.  Factor three considers whether "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake."  Da Costa, 80 F.4th at 344 (quoting TRAC, 750 F.2d at 80).  Factor five more broadly

9

considers "the nature and extent of the interests prejudiced by delay." Id. (quoting TRAC, 750 F.2d at 80).

Adan avers that she has been separated from her husband, who resides in the United States, since 2013, and is thus raising A.A.A. as a single parent in Somalia. Compl. ¶ 54. She further contends that she "experience[es] intense psychological distress" about "whether she will ever be able to rejoin her husband in the U.S. with her young son." Id. Additionally, she has spent "a large sum on legal fees" relating to her son's visa. Id. ¶ 53. Finally, the delay has forced Adan and A.A.A. to remain in Somalia, which, according to the State Department's July 31, 2023, travel advisory, faces "crime, terrorism, civil unrest, health issues, kidnapping, and piracy." Id. ¶ 55 (emphasis omitted).

Taking the harms in reverse order, the harms stemming from the general conditions in Somalia and plaintiffs' legal fees do not move the needle. Although the Court does not minimize these harms, they are not individual to these plaintiffs. Indeed, all visa applicants in Somalia necessarily face the same costs and country conditions. See, e.g., Da Costa, 80 F.4th at 345 (harms that are generalized to the population of plaintiffs' city and not specific to the visa delay do not favor plaintiffs). Courts routinely conclude, however, that family separation does tip these factors in plaintiffs' favor, particularly the longer the separation. See, e.g., Sharifishourabi v. Blinken, Civ. A. No. 23-3382 (RC), 2024 WL 3566226, at *8 (D.D.C. July 29, 2024) (observing that "prolonged family separation . . . tied specifically to the delay at issue [drives] courts to find that TRAC factors three and five weigh[] in plaintiffs' favor"); Meyou, 2022 WL 1556344, at *5; Shoaie v. Blinken, Civ. A. No. 24-01513 (GMH), 2024 WL 4697732, at *13 (D.D.C. Nov. 6, 2024) (collecting cases).

Based on the family separation, the third and fifth factors favor the plaintiffs.

Factor six: Finally, the sixth TRAC factor requires courts to consider agency impropriety but instructs that they "need not find bad faith on the part of the agency to determine unreasonable delay exists." Baygan, 2024 WL 3723714, at *8. When plaintiffs do not allege that defendants have acted in bad faith, this factor is neutral. See Meyou, 2022 WL 1556344, at *5. Here, the plaintiffs did not allege bad faith, and this factor is therefore neutral.[5]

\*   \*   \*   \*   \*

In considering the six factors together, the Court concludes that the plaintiffs have failed to plausibly allege an unreasonable delay at this time. The first and fourth factors, which carry the greatest weight, see, e.g., Baygan, 2024 WL 3723714, at *6 (citing Da Costa, 80 F.4th at 340), strongly favor dismissal. Factor two also strongly favors dismissal, and factor six is neutral. And although the third and fifth factors favor the plaintiffs, they "are not strong enough to justify the opposite conclusion." See Meyou, 2022 WL 1556344, at *5. The factors together, therefore, strongly favor dismissal.

## Conclusion

The Court will dismiss plaintiffs' complaint for failure to state a claim. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 19, 2024

---

[5] In their opposition, the plaintiffs allege for the first time that the government acted in bad faith by failing to comply with Local Rule 7(n). Opp'n at 19. This rule requires the government, in cases "involving the judicial review of administrative agency actions," to "file a certified list of the contents of the administrative record with the Court" with a motion to dismiss. LCvR 7(n)(1). Nevertheless, courts often conclude that this rule is ill fitted to visa mandamus cases because the "administrative record may not be necessary to assess [the] threshold legal question" of whether the plaintiffs have plausibly alleged an unreasonable delay. Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *3 (D.D.C. Mar. 28, 2024); see Janay, 2024 WL 3432379, at *3. Because that is the case here, the Court waives compliance with Local Rule 7(n).